IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Teresa Traxler,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 8:08-3141-RBH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Teresa Traxler, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff completed the ninth grade and has a high school general equivalency diploma (GED). (R. at 389.) The plaintiff has past relevant work as a hospital technician, optician assistant, computer instructor for children, and sales associate/cashier. (R. at 390.) She alleges she became disabled in a work-related accident on July 30, 2002, and the subsequent impairments resulting from the accident.

The plaintiff applied for disability insurance benefits on July 20, 2004. Her application was denied initially (R. at 33-38) and upon reconsideration. (R. at 32, 40-42.) Following an administrative hearing on December 5, 2005 (R. at 387-411), the Administrative Law Judge (ALJ) issued a decision on July 3, 2006, finding that plaintiff was

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

not under a disability as defined by the Act on or before September 20, 2003, which is the plaintiff's last insured date. (R. at 16-29.) The Appeals Council denied the plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. at 5-8.)

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2003.

2. The claimant has engaged in substantial gainful activity relevant to this decision (20 CFR 404.1520(b) and 404.1471, *et seq.*).

3. Through the date last insured, the claimant had the following severe combination of impairments: fibromyalgia, right shoulder impingement and degenerative arthritis in the right knee (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity [to] stand, walk and sit for six hours in an eight-hour workday, to lift and carry 10 pounds with a heaviest weight lifted occasionally of 15 pounds, no push/pull over 15 pounds, with the option to sit/stand at will, no overhead reaching, and no squatting or kneeling.

6. Through the date last insured, the claimant's past relevant work as an optician assistant did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a "disability," as defined in the Social Security Act, at any time through September 30, 2003, the date last insured (20 CFR 404.1520(f)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

2

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act

3

precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) not properly evaluating the opinion of her treating physician; (2) improperly assessing her credibility; and (3) failing to perform a proper analysis of her ability to perform her past relevant work. The Court will address each alleged error in turn.

### **I.    Treating Physician**

The plaintiff first complains that the ALJ failed to give the opinion of her treating physician, Dr. Thomas J. Chambers, controlling authority. Dr. Chambers treated the plaintiff extensively over a period of time from February 4, 2003 through at least June 2, 2005. (R. at 239-258.) On June 2, 2005, Dr. Chambers indicated that the plaintiff had reached her maximum improvement, and would be restricted to 4 hour work days at light duty, with a need to change position every 15 minutes and a limitation on lifting, pushing and pulling of

4

15 pounds. (R. at 239.) The plaintiff complains that this opinion was left untreated by the ALJ.

Dr. Chambers' 2005 opinion, however, was rendered nearly a year and half after expiration of the relevant time period – prior to the plaintiff's date last insured, September 30, 2003 (R. at 18). The defendant, therefore, contends that the ALJ was under no obligation to consider the opinion.

The plaintiff rightly argues, and the defendant agrees, that so long as Dr. Chambers' opinion reflects the plaintiff's condition, as it existed prior to the expiration of plaintiff's insured status, it is relevant and subject to mandatory treatment by the ALJ. *Millner v. Schweiker*, 725 F.2d 243, 246 (4th Cir. 1984) ("A treating physician's diagnosis of claimant's condition may be made after the relevant determination date."). The defendant, however, disagrees that the opinion so reflects. The plaintiff has emphasized the language in the 2005 opinion where Dr. Chambers states that "[t]his is not a new problem for her and I do not see her working an 8 hour day." (R. at 239.)

There are two problems with the plaintiff's plea. First, the phrase "not a new problem" need not definitively mean that the plaintiff's problem persisted for a year and a half prior to the date of Dr. Chamber's opinion or more. It could have persisted for over a year and, yet, still have qualified as "not new." Such is the expanse of time between the plaintiff's last insured status date and Dr. Chambers' opinion that "not a new problem" is incapable of being read as absolutely synonymous with a condition preexisting the last date she was insured. The two are not close in time. Second, the fact that the plaintiff's condition is "not new" does not mean that it has always, or for some time, been disabling. It may have existed for quite a while, as all the parties concede, but not to a disabling extent.

Notwithstanding, the Court would be inclined to remand for the ALJ's failure to make any discussion of the matter himself. The ALJ does not include any specific analysis as to whether or not he believes Dr. Chambers' opinion can rightly be considered as relating to

the period wherein the plaintiff was insured; the Court may not guess about it. The ALJ recounts the substance of the opinion in full but does not ascribe any particular weight to it or explain to what extent it is accepted or rejected. (R. at 25-26.) Both parties agree, however, that the ALJ's RFC findings essentially match Dr. Chambers' findings, with the exception that the disabling limitation to work only 4 hours a day is not included. (See R. at 19; Def. Brief at 17.)

The plaintiff contends, therefore, that the ALJ's partial treatment of the opinion can be reasonably interpreted in only one of two ways: either (1) the ALJ accepted much of Dr. Chambers' opinion but rejected the disability opinion or (2) he concluded that the whole opinion was, in fact, substantively valid, but that it simply did not relate back to the insured period. The plaintiff complains that, in either case, the ALJ's failure to explain himself constitutes a material error. The Court would agree.

The undersigned may not simply presume what the ALJ meant. If he accepted the opinion as properly related to the insured period, then he had a duty to explain the weight afforded Dr. Chamber's opinion, as a treating physician, and why he rejected the limitation that the plaintiff only work 4 hours a day. *See* SSR 96-2p; 20 C.F.R. §416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). He did not. If, on the other hand, he rejected the opinion as not properly reflective of the insured period, then that decision also should have been explained.

Moreover, the Court cannot consider the error harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). The defendant has pointed to what he contends is substantial evidence upon which the ALJ relied to conclude that the defendant could work an 8, as opposed to a 4, hour day and, therefore, that he was not disabled. (See R. at 131-32, 219, 258, 263, 265-67.) But, the Court cannot weigh the corpus of that evidence against the possibility that the ALJ mistakenly failed to consider whether the 4-hour portion of the opinion was related to

6

the insured period but would have been persuaded by it had he made any specific consideration. Nor can the Court ignore the possibility that the ALJ believed that the opinion was relevant but simply rejected it, without explanation, as his duty. This seems like a fairly fundamental element of the Court's ability to review the decision. The ALJ should have the first opportunity to explain his rationale.

The plaintiff has pointed to two other pieces of evidence, which may be considered to have bridged the gap between the 2005 opinion and the insured period, such that the ALJ should at least be required to explain why he has treated the 2005 opinion as not related. On January 16, 2004, following a January 7, 2004 right shoulder surgery, Dr. Chambers indicated, "No work at this time," with an instruction to follow up in six weeks. (R. at 250.) On November 4, 2003, just over a month past the plaintiff's date last insured, Dr. Chambers noted that the plaintiff had lost her job at the hospital due to her medical condition, and indicated her work status was "No use of the right arm. Desk duties." (R. at 251-252.) In conjunction with the 2005 opinion, these records might permit the ALJ to conclude that Dr. Chambers was making some statement about disability which existed within the relevant period.

Accordingly, upon remand, the ALJ should make some specific analysis of the 2005 opinion as to whether it relates to the relevant period or as to the reasons the ALJ would accept or reject it. The Court would not conclude that the ALJ is required to employ the services of a medical advisor to resolve the matter, *see* SSR 83-20, however.

**II.     The Plaintiff's Credibility**

The plaintiff next contends that the ALJ failed to properly assess the credibility of her subjective complaints of pain. Specifically, the plaintiff contends that the ALJ was largely persuaded by what he interpreted as a point of dishonesty concerning her work history. The ALJ noted that although the plaintiff testified that she had not worked since December 2002, her Disability Report, indicated that she had continued to perform light duty work through March 3, 2003. (R. at 27.) The plaintiff argues that this is a misinterpretation of the

7

evidence. Namely, the plaintiff alleges that although she earned payments under the Family Medical Leave Act through 2003, she was, in truth, not working during that time. (See R. at 375-86.) The defendant responds that the plaintiff's evidence to this end, which was also submitted to the Appeals Council, was ambiguous and not a "material" piece of evidence the Council was obligated to review. (Def. Brief at 21); *see Wilkins v. Secretary, Dep't of Health & Human Serv.*, 953 F.2d 93, 95-96 (4th Cir. 1991).

The Court need not decide it, however. The matter seems more straight forward. The ALJ cited numerous reasons for discounting the plaintiff's complaints of pain. (R. at 27-28.) The ALJ found the plaintiff's complaints of pain inconsistent with substantial evidence from the objective medical record and her own subjective representations therein. *Id.* None of these bases are contested by the plaintiff and, on their own, constitute substantial evidence to diminish her credibility as to the intensity and limiting effects of her condition. *See Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). Accordingly, whatever misperception the ALJ may have suffered concerning the plaintiff's representations about her work history, it seems harmless in effect. *See Mickles*, 29 F.3d at 921. The plaintiff has assumed, without demonstrating, that the ALJ principally relied on the perceived inconsistency concerning her work history to discount her testimony. The decision does not suggest it. The ALJ included a significant discussion of other reasons for not crediting her testimony fully. (See R. at 27-28.)

Notwithstanding, to the extent the district court accepts the recommendation to remand, it does not seem to much to ask for the ALJ to reexamine his conclusions about the plaintiff's credibility in light of the possibility that the evidence was not exactly as how he perceived it, originally.

### III.    The Plaintiff's Past Work

Lastly, the plaintiff makes two or three objections to the ALJ's determination that the plaintiff could perform her past relevant work as an optician's assistant. First, the plaintiff contends that the determination that she can perform her past relevant work lacks the

necessary clarity and consideration of various and contemplated factors that SSR 82-62 demands. *See* SSR 82-62. The plaintiff, herself, however, has not outlined any analysis under SSR 82-62, which would be favorable to her, such that a want of specificity in the ALJ's discussion can be characterized as anything other than harmless. Moreover, the decision contains precisely the three findings, which the plaintiff would demand: the plaintiff's RFC; the physical and mental demands of an optician's assistant – "sedentary, semiskilled;" and a determination that she can perform the work based on her RFC. (R. at 28.)

Next, the plaintiff asserts that the ALJ improperly found her capable of returning to her past relevant work as an optician assistant because the position requires a Skill Level 6, which she contends is above her abilities. (Pl. Br. at 38-40). The Court would agree with the defendant, however, that the plaintiff's argument is unavailing because the ALJ's residual functional capacity finding did not place any limitations on the plaintiff's Skill Level such that it could be in any conflict with the demands of the assistant position. (See R. at 19.)

Finally, the plaintiff asserts that the vocational expert's (VE) testimony indicating that the plaintiff would be able to change positions (sit/stand) at will as an optician's assistant conflicts with the Dictionary of Occupational Titles (DOT) definition of that position. (Pl. Br. at 39-40.) The plaintiff complains that this discrepancy must be explained or reconciled. *See* SSR 00-4p. Again, the Court would generally agree with the defendant that there was no apparent conflict, *see id.*, that required explanation by the VE because there is no category in the DOT that would indicate whether the position offers a sit or stand option. The ALJ expressly included, in his hypothetical to the VE, the limitation that the plaintiff would need to "change positions from a sedentary position to a standing position about every 15 minutes when in the standing position." (R. at 409.) The VE testified that the plaintiff's past work as an optician's assistant would accommodate such a restriction. *Id.* Accordingly, the Court is unaware of what conflict existed. The DOT does not recommend

9

differently, as far as the plaintiff has explained. And, the VE was fully aware of the restriction in recommending that the plaintiff could perform her past relevant work.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence, in certain respect. It is, therefore, recommended, for the foregoing reasons, that the Commissioner's decision should be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED

                                                       s/Bruce Howe Hendricks
                                                       United States Magistrate Judge

February 1, 2010
Greenville, South Carolina